Eugene Ruhland
vs.
Lafayette Worsted Company } W. C. A. No. 1434.

March 4, 1933.

CHURCHILL, J. Heard on petition for compensation under the Workmen's Compensation Act.

The petitioner, a man 36 years of age, was employed by the respondent company at the time of his alleged injury and was earning on an average of $44.65 a week. His claim, shortly stated, is that he received a blow on the abdomen while at work on January 19, 1932, causing a laceration of an intestine. The position of the respondent is that, under the circumstances shown to exist, such an injury was impossible. Medical testimony in the case is in direct conflict.

After the hearing the Court intimated to counsel for the respondent that the opinion of a medical expert, appointed under the statute, would be helpful, but no motion has been forthcoming and the evidence, therefore, must be weighed without the light cast by a disinterested opinion.

The petitioner at the time of the accident was engaged in transporting wool on a table across a room in the mill. The table was equipped with two swivel wheels, making it necessary for the petitioner to raise one end of the table from the floor when he was moving the table about.

Petitioner testified: "I don't know how far I was going with it (the table) when it struck an object—I don't know what it was—on the floor, and it swung the table over and struck a post, and it pushed it back and hit me on the abdomen here, and I was stunned, and the first thing I knew I felt something in my underwear; I didn't know what it was. I went to the toilet and when I got there I noticed I had some blood in my underwear. * * * It struck me very hard. I was stunned. I don't know how hard it hit me. I was stunned."

The petitioner appeared to the Court to be truthful and straightforward in his testimony.

He went home very soon after the accident and called Dr. Brault, who arrived at his home between two and four o'clock in the afternoon of the day of the accident and found the petitioner suffering from a hemorrhage of the intestine and, as the doctor stated, bleeding rather freely. The seat of the hemorrhage was 12 or 13 inches from the rectum.

Dr. Brault, with the appropriate instruments, made an exploration and examination of the intestine and discovered a fresh laceration of the inner coat, which he ascribed to the blow received by the petitioner that day. Both the petitioner and his physician testified that the petitioner had previously been suffering from hemorrhoids but that he was cured of this affliction in December, 1931.

Dr. Brault testified that the laceration was found at a point above the region which he had previously treated for hemorrhoids, and was further of the opinion that the bleeding was of a character not found in cases of bleeding from hemorrhoids. He also testified that, although such an injury was a rather unusual one, under the circumstances he had no doubt from the history of the case and his own examination of the petitioner that the laceration was the result of the trauma suffered by the petitioner.

Dr. Joseph C. Johnston examined the petitioner on March 27, 1932. He found him in excellent physical condition but suffering from two small hemorrhoids at the anal orifice. He testified he saw no evidence of trauma and gave it as his positive opinion that the laceration of the intestine could not have occurred under the circumstances and the facts as disclosed by the history of the case. He made no exploration of the intestine such as had been made by Dr. Brault and further testified that hemorrhoids would not have caused the severe hemorrhage described by Dr. Brault.

Dr. Gormley was of a like opinion as Dr. Johnston but had made no examination of the petitioner and based his opinion entirely upon the evidence given at the hearing.

Both physicians based their opinions upon the assumed fact that there was no evidence of injury to the tissues between the point of impact on the abdomen and the laceration in the intestine. Dr. Brault had testified that he saw none.

In commenting on the testimony of the two physicians called by the respondent, it may be pointed out that neither of them saw the petitioner when an examination would have been of the greatest advantage; that no exploration was made of the intestine, and these facts must be weighed against the testimony of Dr. Brault, who saw him shortly after the accident and who testified as an eye witness on a question of fact.

The Court, on all the testimony, finds as a fact that the petitioner has sustained the burden of proof imposed upon him; that the petitioner, as a result of an accident sustained at the plant of the respondent on January 19, 1932, while in the course of his employment, received an injury due to the accident, causing total disability. In making these findings of fact, the Court has not overlooked the testimony adduced by the respondent nor the strength of the argument made in its behalf, but it cannot say that the medical opinions given by the two physicians testifying for the respondent are sufficient, under the circumstances, to equal or outweigh in probative value the direct testimony of the petitioner and Dr. Brault.

The next question is as to the length of the disability. The petitioner simply testified that the doctor gave him orders to go back to work on August 23, 1932. Dr. Brault testified that he took care of the petitioner from January 19, 1932, to the 15th of September, 1932, and that he "gave him a certificate to the effect he could go back to work, August 23rd."

Dr. Johnston examined the petitioner on March 27, 1932, and gave it as his positive opinion that on that day he (petitioner) was in excellent physical condition. In view of this state of the testimony, the Court finds as a fact that the petitioner has not sustained the burden of proof of showing disability existing beyond March 27, 1932.

The respondent objects to the payment of any amount for medical services rendered on behalf of the petitioner after the accident. Payment is resisted on the ground that the attending physician, not holding a license to practice medicine in the State of Rhode Island at the time the services were rendered, is not, by virtue of Chap. 159, Sec. 8, General Laws of 1923, entitled to receive compensation for his services.

Dr. Brault lived in Massachusetts, just over the boundary line, and was a licensed practitioner in that commonwealth. The first visit to the petitioner was in the nature of a call in an emergency and, giving the statute a liberal construction to cover such a case, the Court is of the opinion that the respondent is liable for the payment of $50, the amount of the bill for the first

152

treatment. All the subsequent visits come under the ban which the statute imposes upon a unlicensed practitioner in this State.

A decree may be entered in conformity with the findings of fact and rulings of law in this rescript.

For petitioner: Elphege J. Daignault.
For respondent: Lee A. Worrell.